UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

DONNA J. ZIMPFER,                                          **COMPLAINT**

                              Plaintiff,                   **JURY TRIAL DEMANDED**

        v.

                                                          Case No. 21-cv-231
HILBERT COLLEGE, MICHAEL BROPHY,
PRESIDENT, KRISTINA LANTZKY-EATON,
PROVOST AND VICE PRESIDENT FOR
ACADEMIC AFFAIRS, and MAURA FLYNN,
HUMAN RESOURCES DIRECTOR,

                              Defendants.

───────────────────────────────────────

## <u>COMPLAINT</u>

Plaintiff, DONNA J. ZIMPFER ("Plaintiff" of "Professor Zimpfer"), by and

through her attorneys, Rupp Baase Pfalzgraf Cunningham LLC, as and for her complaint against

defendants HILBERT COLLEGE, MICHAEL BROPHY, PRESIDENT,

KRISTINA LANTZKY-EATON, VICE PRESIDENT ACADEMICS, and MAURA FLYNN,

HUMAN RESOURCES DIRECTOR (collectively, "Defendants"), alleges as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      This action is brought to challenge the Defendants' intentional and

unlawful conduct in providing Professor Zimpfer, a Native American female, with unequal pay

as compared to her Caucasian and male counterparts.  Simply put, Defendants have failed to pay

Professor Zimpfer equal pay for equal work.

2.      This action also is brought to correct and remediate the discriminatory pay disparity, and culture of retaliation, that have silently plagued Hilbert College ("Hilbert" or the "College") for well over a decade.

3.      When Professor Zimpfer first learned of the unwarranted pay disparity, she reported it.

4.      On or about September 6, 2019, Professor Zimpfer submitted an internal complaint to the College's Title IX Office.

5.      Less than a week later, on or about September 12, 2019, the College suspended Professor Zimpfer's access to her Hilbert email account.

6.      Her husband, Professor Randy Zimpfer, also experienced a suspension of *his* Hilbert email account.

7.      Defendant Lantzky-Eaton and Defendant Flynn advised Professor Zimpfer that there was "suspicious activity" on her Hilbert "Blackboard" account—a teaching tool used to interact with students online.

8.      But the College never suspended Professor's Zimpfer's access to her Blackboard account—only her Hilbert *email*.

9.      Professor Zimpfer complained to the College that the suspension of her email was retaliatory for her complaints of discriminatory pay practices.

10.     The College pretextually denied this, chalking it up to a standard operating procedure in response to a potential "security breach" of the College's IT systems.

11.     Matthew Holmes, then the Director of IT for the College, told Professor Zimpfer a different story.  According to Mr. Holmes, he was asked to suspend Ms. Zimpfer's email access, something he "never" had been asked to do before.

12.     Professor Zimpfer's email access was restored shortly thereafter, although it was not fully operational for several days.

13.     A few days later, on or about September 19, 2019 Plaintiff filed a timely Charge of Discrimination, *pro se*, with the New York State Division of Human Rights ("DHR"). The Charge was assigned Case Number 10203856.

14.     At Plaintiff's request, that Charge was cross-filed with the Buffalo Office of the Equal Employment Opportunity Commission ("EEOC" or the "Commission") and assigned Charge Number 16G-2019-05175.

15.     Following this incident, Professor Zimpfer's lawful requests for medical leave were heavily scrutinized by the College and Defendant Flynn.

16.     Following this incident, Professor Zimpfer's proposed teaching plans and schedules were heavily scrutinized by the College and Defendant Lantzky-Eaton.

17.     The College's disregard for her complaint of discriminatory pay practices, and ensuing retaliatory surveillance of her work, caused Professor Zimpfer to require medical leave for at least one qualified disability.

18.     The College never engaged Professor Zimpfer in the interactive process.

19.     Professor Zimpfer's related request to return to work on-campus was denied summarily and without reasonable explanation; the College even barred her from campus.

20.     The College continues to pay Ms. Zimpfer less than her male counterparts.

21.     The College continues to pay Ms. Zimpfer less than her counterparts who are not of Native American descent.

22.     The College continues to pay Ms. Zimpfer less than her counterparts who have skin that is not brown.

23.     The College's explanation for the pay disparity is unworthy of credence and pretext for discrimination.

24.     The College pays (and has paid) Professor Zimpfer substantially less than her male, non-Native American, non-brown colleagues, despite performing work that is substantially equal, in violation of the Equal Pay Act, Title VII, and various New York State statutes, including the New York Achieve Pay Equity law and the New York State Human Rights Law.  This discrimination is intentional in violation of Section 1981.

**CONDITIONS PRECEDENT**

25.     On or about September 19, 2019, Plaintiff filed a timely Charge of Discrimination, *pro se*, with the New York State Division of Human Rights ("DHR").  The Charge was assigned Case Number 10203856.

26.     At Plaintiff's request, that Charge was cross-filed with the Buffalo Office of the Equal Employment Opportunity Commission ("EEOC" or the "Commission") and assigned Charge Number 16G-2019-05175.

27.     On January 5, 2021, per Plaintiff's request, the EEOC New York District Office issued Plaintiff a Notice of Right to Sue.  Plaintiff files this action within ninety days of receipt of same.

28.     On January 25, 2021, at Plaintiff's request, the Interim Commissioner of the DHR, Johnathan J. Smith issued a Notice and Final Order incorporating Administrative Law Judge Martin Erazo's Recommended Order of Dismissal for Administrative Convenience, formally dismissing the DHR complaint for administrative convenience "so that [Plaintiff] could commence a federal action."

29.     Plaintiff has exhausted her administrative remedies.

**PARTIES**

30.     At all times hereinafter mentioned, Donna J. Zimpfer ("Plaintiff" or "Professor Zimpfer") was a natural person with a primary residence in the County of Chautauqua, State of New York.

31.     At all times relevant herein, Professor Zimpfer was (and is) employed by the College.  She has held several titles at Hilbert, all within the professorial ranks.  Presently, she holds the title of Associate Professor in the College's Criminal Justice Department.

32.     Upon information and belief, at all times hereinafter mentioned, Hilbert was and is a private higher-educational institution located in Hamburg, New York.  According to the College, it embraces its Catholic Franciscan heritage and values.

33.     At all relevant times, the College has continuously been doing business in the State of New York and the County of Erie and has continuously had at least 15 employees.

34.     At all relevant times, the College has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e.

35.     Upon information and belief, the College receives federal funding.

36.     At all relevant times, the College has acted directly or indirectly as an employer in relation to employees and has continuously been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

37.     At all relevant times, the College has continuously employed employees engaged in commerce or in the production of goods for commerce within the meaning of Sections 3(b), (i) and (j) of the FLSA, 29 U.S.C. §§ 203(b), (i) and(j), has continuously been an enterprise engaged in commerce or in the production of goods for commerce within the meaning

of Sections 3(r) and (s) of the FLSA, 29 U.S.C. §§ 203(r) and (s), in that said enterprise has continuously been engaged in the operation of an institution of higher education.

38.     At all relevant times, the College has employed Professor Zimpfer.

39.     Upon information and belief, at all times hereinafter mentioned, defendant Michael Brophy ("Brophy") was and is a natural person with a primary residence located in the in the County of Erie, State of New York.

40.     Since January 2019, Dr. Brophy has served as the College's President and, as such, was (and is) Plaintiff's superior, with supervisory control over Plaintiff and her Department.

41.     Upon information and belief, at times relevant herein, defendant Kristina Lantzky-Eaton ("Lantzky-Eaton") was and is a natural person with a primary residence located in the in the County of Erie, State of New York.  Upon information and belief, at the time of this filing, Lantzky-Eaton resides in the County of Monroe, State of New York.

42.     At times relevant herein, Dr. Lantzky-Eaton served as the Provost and Vice President of Academic Affairs at Hilbert College and, as such, she was Plaintiff's superior, with jurisdiction over Plaintiff and her Department.

43.     Upon information and belief, as of September 2020, Lantzky-Eaton is no longer employed by the College.

44.     Upon information and belief, at all times hereinafter mentioned, defendant Maura Flynn ("Flynn") was and is a natural person with a primary residence located in the in the County of Erie, State of New York.

45.     At times relevant herein, Ms. Flynn served (and continues to serve) as the Director of Human Resources at the College.  As such, Ms. Flynn was (and is) an administrator with the College, with decision-making powers and supervisory responsibilities that directly impacted (and continue to impact) Plaintiff.

## **JURISDICTION AND VENUE**

46.     This Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  This action is authorized and instituted pursuant to Sections 16(c) and Section 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. § 206(d) ("Equal Pay Act"), and pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Section 1981").

47.     Because this Court has original jurisdiction over Plaintiff's action through federal question jurisdiction, this Court has supplemental jurisdiction over the remaining claims brought under New York State law, pursuant to 28 U.S.C. § 1367.  Those state law claims include claims under the New York Labor Law § 194 (the "Achieve Pay Equity" law), as well as the New York State Human Rights Law, Executive Law § 290, et seq.

48.     Venue is proper in the Western District of New York, as all Defendants reside (or in the case of the College, are located) within it, and the events giving rise to the claims occurred within this judicial district.

## FACTUAL BACKGROUND

49.     Professor Zimpfer presently is an Associate Professor in the College's Criminal Justice Department.

50.     She holds a master's degree in Criminal Justice.

51.     Professor Zimpfer is a female.  She is of Native American descent/ethnicity.  Her skin is brown.

52.     Professor Zimpfer had prior teaching experience before joining the Hilbert faculty.

53.     In addition to being a skilled criminal justice professor, Professor Zimpfer has extensive field experience with the New York State Department of Corrections.  She is a retired Sergeant.  She is a trained hostage negotiator and has peace officer and firearms training.

54.     The College first hired Plaintiff on or about September 7, 2004 as an adjunct professor.

55.     A few years later, Professor Zimpfer joined the full-time faculty in 2007.  At that time, the College paid Plaintiff an annual salary of $35,000.

56.     In 2011, the College examined its pay practices and granted Professor Zimpfer an "equity increase."

57.     The College did not examine its pay practices again until 2020, likely in response to Professor Zimpfer's complaints.

58.     Professor Zimpfer became an Associate Professor in 2016.

59.     At the time of her internal complaint to the College, September 2019, Professor Zimpfer was paid an annual salary of $43,732.

60.     On or about October 20, 2020 the College granted all permanent employees a 4% base salary increase, effective November 30, 2020.

61.     On or about November 2020, the College provided Professor Zimpfer with an additional $4,000 increase in her annual base pay.

62.     As of the date of this filing, Professor Zimpfer's base salary is $49,481 per year.

63.     Even with these recent pay increases, Professor Zimpfer is paid substantially less than her male colleagues for the same work.  She also is paid less than her female colleagues who are not Native American or have brown skin, despite performing substantially the same work.

64.     Despite having worked for the College for over 16 years, Professor Zimpfer's annual salary is less than male, non-Native American, and non-brown professors,

including many who were hired years after Professor Zimpfer was hired, have less experience, and/or have fewer teaching duties at the College.

65.     Specifically, for the year 2019-2020, Plaintiff was paid $43,732 in annual base salary. That same year, a male professor in the Criminal Justice Studies Division, who was hired three years *after* Plaintiff joined the full-time faculty, was paid an annual base salary of $61,800. Another male professor, who was hired exactly six years *after* Plaintiff joined the full-time faculty, was paid $50,900 in annual base salary. Neither of these individuals is Native American. Neither has brown skin.

66.     During that same year (2019-2020), a female professor within the Criminal Justice Studies Division, who is not Native American, and whose skin is not brown, was paid $60,000 in annual base salary, despite being hired exactly *three* years after Plaintiff joined the full-time faculty.

67.     Within the Criminal Justice Studies Division, a female professor who is not Native American, and whose skin is not brown, earned $57,373 in annual base salary in 2019-2020, nearly $14,000 more than Plaintiff. This professor had no full-time teaching experience prior to joining Hilbert in 2003 (just one year before Plaintiff was hired as an adjunct).

68.     A male professor within the Criminal Justice Studies Division was hired on August 1, 2015 (eight years after Plaintiff joined the full-time faculty, and eleven years after she was hired as an adjunct). This professor was given a $50,000 annual base salary. This male

employee is an Assistant Professor, a lower title than Professor Zimpfer, and he teaches *fewer* courses than Plaintiff.  He also is not Native American and he does not have brown skin.

69.     Upon information and belief, this pay disparity has existed for, at least, the last ten years.

70.     At all relevant times, Professor Zimpfer has performed substantially equal work, considering the skills, effort and responsibilities of the job, under similar working conditions.

71.     During her employment at Hilbert, Professor Zimpfer has instructed, at a minimum, the following courses: Sociology 101 (Intro to Sociology); CJ 101 (Intro to Criminal Justice); CJ 102 (Juvenile Delinquency); CJ 200 (Intro to Corrections); CJ 300 (Probation, Parole, and Community-Based Corrections); CJ 302 (Juvenile Justice Systems); CJ 400 (Advanced Issues in Corrections); PS 402 (Junior Symposium); and GS 101 (Foundations Seminar).

72.     She was a member of the team that developed the Foundations Seminar/First-Year Experience course from its inception.  She consistently is lauded for her performance as a professor.

73.     On or about June 5, 2019, at Plaintiff's request, Defendant Brophy met with Professor Zimpfer to discuss the salary disparity that Plaintiff had recently uncovered.

74.     During that meeting, Plaintiff expressed her concern that she was not being paid fairly in comparison to less-senior male faculty members within her Division.

75.     Brophy implied that differences in faculty salaries can be caused by a multitude of factors.  As one example, Brophy stated that "those who hold their position as a second career" [like Professor Zimpfer, who spent years in the field prior to teaching], sometimes earn less as a faculty member.

76.     Brophy promised to review all faculty compensation with the Board of Trustees to ensure pay equity.

77.     Later that same day, June 5, 2019, Plaintiff sent Brophy an email memorializing their discussion and requesting a fair salary increase.

78.     Brophy responded that he would not make any changes in salaries until the full study of faculty compensation was conducted.  He then implied that if she did not execute her employment agreement for the following year, "as is," she would be out of a job.

79.     Under duress, Plaintiff executed that agreement and continued teaching her courses.

80.     On or about September 6, 2019, Professor Zimpfer filed an internal complaint of discrimination in connection with her unequal pay.  She submitted that written complaint to the College's Title IX Officer.

81.     Less than one week later, Professor Zimpfer realized that the College had suspended her access to her Hilbert email account.

82.     She also learned that her husband, Professor Randy Zimpfer, had *his* access to *his* Hilbert email account suspended.

83.     Plaintiff would later learn that just two other employees had their email access suspended during this time.

84.     Despite multiple opportunities to explain the situation, Defendants never have provided Plaintiff with a coherent explanation.  Instead, Defendants have provided inconsistent explanations.

85.     At times, Plaintiff was told her Blackboard account was the subject of suspicious activity.  But Plaintiff never lost access to her Blackboard, only to her email account.

86.     At other times, Plaintiff was told that the suspension of her email was due to a College-wide breach.  But only four employees had their accounts suspended, and the College did not follow its normal practice of notifying all employees of a potential security risk.

87.     Defendant Lantzky-Eaton promised to send Professor Zimpfer "screen shots" of the suspicious activity but never did so and, upon information and belief, resigned from the College in late August 2020, after being demoted to Chemistry Professor.

88.     Professor Zimpfer was never informed as to why her husband's email access was suspended.

89.     Professor Zimpfer had a phone conversation with then-Director of IT, (the "Network Administrator"), Matthew Holmes, who stated he was just following orders and previously "never disabled employees' email accounts," or words to that effect, and that he needed to research how to restore an email account to its original state.

90.     Upon information and belief, Defendants were attempting to increase their digital surveillance of Professor Zimpfer in retaliation for her internal complaint.  When Defendants realized Plaintiff was aware of their attempt to do so, they scrambled to restore her email access.

91.     Shortly thereafter, Plaintiff, then *pro se*, filed a Charge of Discrimination with the Division of Human Rights ("DHR") on or about September 19, 2019.

92.     Approximately one month later, Plaintiff began to experience anxiety and paranoia, feeling as though her every movement (digital or otherwise) is being monitored by the College and aided by the Defendants.  She also began to experience physical manifestations of this distress.

93.     She lawfully utilized accrued sick leave to attend to these health concerns.

94.     On or about October 21, 2019, Professor Zimpfer's doctor cleared her to return to campus duties one day per week.

95.     Professor Zimpfer provided valid medical documentation in support of her return to campus.

-15-

96.     At first, Defendant Flynn and Professor Zimpfer's Department Chair both found that documentation acceptable.  That decision abruptly changed the next day when, on October 22, 2019, the College informed her that the was not to return to campus.  This exacerbated Plaintiff's distress.

97.     The College did not engage Professor Zimpfer in the interactive process.

98.     As a result, Professor Zimpfer was barred from teaching her brick-and-mortar courses from October 22 through October 28, 2019.

99.     Defendants then concocted and applied an unfair and disparate sick leave policy as to Professor Zimpfer, scrutinizing her every request and enlisting Plaintiff's Department Chair (rather than the Human Resources Department) to communicate with Plaintiff regarding her confidential medical requests.

100.     At times, Defendant Flynn would outright ignore Plaintiff's requests for information regarding the terms and conditions of her employment, including the computation and use of sick leave.

101.     These interactions with the College deviated from past practices, of which Professor Zimpfer has personal knowledge.  Plaintiff is a cancer survivor.  She took more than five months of leave in 2017 and has ample experience with requesting medical leave at Hilbert.

102.     After making her complaints of unequal pay, those practices changed.

-16-

103.    Moreover, the Defendants' disparate treatment of Plaintiff has continued through the present.

104.    As one example, for the Fall 2020 semester, amidst the COVID-19 pandemic, Defendants insisted that Professor Zimpfer submit medical documentation to teach remotely.  But at least one other professor within the Criminal Justice Studies Division was *not* required to provide documentation and still was allowed to instruct remotely during the same semester.

105.    Defendants Brophy, Lantzky-Eaton, and Flynn, all of whom were administrators at the College and, in the cases of Brophy and Lantzky-Eaton, Plaintiff's superiors, all were involved in the decision-making processes referenced herein.

106.     The foregoing has had the cumulative effect of creating a hostile work environment.  The foregoing has caused Plaintiff to suffer severe emotional distress and physical manifestations thereof.

107.    Upon information and belief, Defendants' actions were willful, reckless, and/or made with malice.

**FIRST CAUSE OF ACTION**

**EQUAL PAY ACT VIOLATIONS**
**AGAINST ALL DEFENDANTS**

108.    The allegations contained in the foregoing paragraphs are incorporated by reference.

109.    Since at least 2011, Defendants have engaged in unlawful employment practices in violation of the Equal Pay Act, Sections 6(d)(1) and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206(d)(1) and 215(a)(2), by paying Professor Zimpfer wages at a rate less than the rate at which they pay male professors.

110.    At all relevant times, Professor Zimpfer has performed work that was and is substantially equal to that of male professors considering the skills, effort, and responsibilities of the job.  At all relevant times, Professor Zimpfer has worked under conditions similar to male professors.

111.    At all relevant times, Defendants have paid and continue to pay Plaintiff at a lower rate than her male colleagues.

112.    As shown above, Professor Zimpfer was also retaliated against for asserting violations of the Equal Pay Act.

113.    As a result of the acts complained of above, the College has withheld and is continuing to withhold the payment of wages due to Professor Zimpfer, causing damages.

114.    The unlawful practices complained of above were and are willful, and Defendants Brophy, Lantzky-Eaton, and Flynn are personally liable, jointly and severally.

## SECOND CAUSE OF ACTION

### DISCRIMINATION BASED ON RACE AND ETHNICITY
### IN VIOLATION OF 42 U.S.C. § 1981
### AGAINST ALL DEFENDANTS

115.    The allegations contained in the foregoing paragraphs are incorporated by reference.

116.    Defendants intentionally discriminated against Plaintiff on the basis of her race/ethnicity and color in violation of Section 1981.

117.    Defendants Brophy, Lantzky-Eaton, and Flynn were personally involved in the discrimination with their direct participation.

118.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## THIRD CAUSE OF ACTION

### GENDER DISCRIMINATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### AGAINST HILBERT COLLEGE

119.    The allegations contained in the foregoing paragraphs are incorporated by reference.

120.    Defendant Hilbert College discriminated against Professor Zimpfer because she is female.

121.    Any reasons proffered by Hilbert to justify its unequal pay are mere pretext for discrimination.

122.    Plaintiff has been damaged in an amount as yet undetermined.

## **FOURTH CAUSE OF ACTION**

**DISCRIMINATION BASED ON RACE AND COLOR
IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
AGAINST HILBERT COLLEGE**

123.    The allegations contained in the foregoing paragraphs are incorporated by reference.

124.    Defendant Hilbert College discriminated against Professor Zimpfer because she is Native American and her skin is brown.

125.    Any reasons proffered by Hilbert to justify its unequal pay are mere pretext for discrimination.

126.    Plaintiff has been damaged in an amount as yet undetermined.

## **FIFTH CAUSE OF ACTION**

**RETALIATION AND HOSTILE WORK ENVIRONMENT
IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
AGAINST HILBERT COLLEGE**

127.    The allegations contained in the foregoing paragraphs are incorporated by reference.

128.    Plaintiff engaged in multiple protected activities set forth hereinabove.

129.    Defendant Hilbert was aware of those activities.

130.    In various ways, Defendant Hilbert caused Plaintiff to suffer multiple adverse employment actions and harassment in retaliation for her protected activities.  Such actions were of the type that would dissuade a reasonable person from engaging in protected activities.

131.    The retaliatory acts complained of, including the constant scrutiny, surveillance, singular policies applied only to Plaintiff, intentionally confusing and mixed messages concerning leave rights and other administrative tasks, being ignored or subject to condescending tone, have created a hostile work environment.

132.    The retaliatory acts complained of were (and are) sufficiently severe or pervasive to constitute a hostile work environment under Title VII, and have caused Plaintiff to suffer severe emotional distress, paranoia, insomnia, anxiety, depression, loss of enjoyment of life.

133.    Plaintiff has experienced physical manifestations of that distress, some or all of which may be permanent.

134.    Professor Zimpfer has been damaged in an amount as yet undetermined.

## SIXTH CAUSE OF ACTION

**RETALIATION
IN VIOLATION OF 42 U.S.C. § 1981
AGAINST ALL DEFENDANTS**

135.     The allegations contained in the foregoing paragraphs are incorporated by reference.

136.     Plaintiff engaged in multiple protected activities set forth hereinabove.

137.     All Defendants were aware of those activities.

138.     In various ways, Defendants intentionally retaliated against Plaintiff on the basis of her race/ethnicity and color in violation of Section 1981.

139.     Defendants Brophy, Lantzky-Eaton, and Flynn were personally involved in the discrimination with their direct participation.

140.     Plaintiff has thereby been damaged in an amount as yet undetermined.

## SEVENTH CAUSE OF ACTION

**WILLFUL PAY DISCRIMINATION
IN VIOLATION OF NEW YORK LABOR LAW § 194
AGAINST HILBERT COLLEGE**

141.     The allegations contained in the foregoing paragraphs are incorporated by reference.

142.     Plaintiff is a member of multiple protected classes.

143.     Based on the foregoing, Plaintiff was (and is) paid at a rate less than the rate at which an employee outside her protected class is paid for substantially similar work, when viewed as a composite of skill, effort and responsibility, and performed under similar working conditions.

144.     Defendants' actions in this regard were (and are) willful.

145.     Plaintiff has thereby been damaged in an amount as yet undetermined.

**EIGHTH CAUSE OF ACTION**

**RETALIATION
IN VIOLATION OF NEW YORK LABOR LAW § 194
AGAINST HILBERT COLLEGE**

146.     The allegations contained in the foregoing paragraphs are incorporated by reference.

147.     Plaintiff complained of unfair and unlawful pay practices pursuant to Labor Law § 194, the "New York Achieve Pay Equity" law.

148.     Defendant Hilbert was aware of those complaints.

149.     In various ways, Defendant Hilbert caused Plaintiff to suffer multiple adverse employment actions and harassment in retaliation for her protected activities related to the New York Achieve Pay Equity law.  Such actions were of the type that would dissuade a reasonable person from engaging in protected activities.

150.     Plaintiff has thereby been damaged in an amount as yet undetermined.

-23-

## NINTH CAUSE OF ACTION

### GENDER DISCRIMINATION
### IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
### AGAINST ALL DEFENDANTS

151.    The allegations contained in the foregoing paragraphs are incorporated by reference.

152.    As a female, Plaintiff is a member of a protected class pursuant to the New York State Human Rights Law, Executive Law § 290, et sq.

153.    Plaintiff has been discriminated against on the basis of her gender because male colleagues are paid more than she is for substantially similar work.

154.    Any reasons proffered by Defendants to account for this unequal pay are mere pretext for gender discrimination.

155.    After dedicating over 15 years of her life to the College and her students, to learn that she was (and is) paid less than her colleagues, because she is female, has caused Plaintiff to suffer great harm.

156.    Hilbert, Brophy, Lantzky-Eaton, and Flynn each knew of the unequal pay because they perpetrated it, condoned it, and/or made decisions that directly impacted it. Defendants further had knowledge of it because Plaintiff complained about it on multiple occasions.

157.     Despite knowledge of the gender discrimination, Defendants took no steps to remediate it.

158.     Plaintiff has thereby been damaged in an amount as yet undetermined.

## **TENTH CAUSE OF ACTION**

**HOSTILE WORK ENVIRONMENT
IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
AGAINST ALL DEFENDANTS**

159.     The allegations contained in the foregoing paragraphs are incorporated by reference.

160.     Plaintiff is a member of multiple protected classes pursuant to the New York State Human Rights Law, Executive Law § 290, et sq.

161.     Following her complaints of discrimination on the bases of these multiple protected classes, Plaintiff's workplace became pervaded with unwelcome harassment, as described hereinabove, that made Plaintiff uncomfortable, paranoid, depressed, anxious, stressed, and dejected in her workplace.

162.     Defendants' harassment was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and created a hostile work environment.

163.     Some of Defendants' acts, as described above, quite literally did change the terms and conditions of her employment, with respect to her use of leave and her communications and interactions with administration.

164.     Defendants' actions were both objectively and subjectively offensive, such that a reasonable person would find it hostile, offensive, and/or abusive.

165.     Professor Zimpfer did, in fact, find Defendants' conduct to be hostile, offensive, harassing, controlling, abusive, and emotionally devastating.

166.     After dedicating over 15 years of her life to the College and her students, to endure the acts complained of above, simply because she complained of unlawful discriminatory pay, has caused Plaintiff to suffer great harm.

167.     Brophy, Lantzky-Eaton, and Flynn each knew of the harassment and hostile work environment because they perpetrated it, condoned it, and/or made decisions that directly impacted the hostile work environment.  Defendants further had knowledge of it because Plaintiff complained about it contemporaneously on multiple occasions.

168.     Despite knowledge of the harassment, Defendants took no steps to remediate it.

169.     Plaintiff has thereby been damaged in an amount as yet undetermined.

**ELEVENTH CAUSE OF ACTION**

**RETALIATION**
**IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW**
**AGAINST ALL DEFENDANTS**

170.     The allegations contained in the foregoing paragraphs are incorporated by reference.

171.    Plaintiff engaged in multiple protected activities under the Human Rights Law, including her informal complaints of unequal pay on the basis of sex, both oral and written, her written internal complaint to the Title IX officer, her formal charge of sex and race/color discrimination to the DHR and cross-filing with the EEOC, and her oral complaints that certain activities and practices constituted disability discrimination and/or retaliation by Defendants.

172.    Defendants had knowledge of all of these protected activities.

173.    As a result, in various ways, Defendants caused Plaintiff to suffer multiple adverse employment actions and harassment in retaliation for her protected activities.  Such actions were of the type that would dissuade a reasonable person from engaging in protected activities under the Human Rights Law.

174.    Any proffered explanation for these actions is mere pretext for retaliation and/or wholly unworthy of credence, as explained hereinabove.

175.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## TWELFTH CAUSE OF ACTION

### DISABILITY DISCRIMINATION
### IN VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
### AGAINST ALL DEFENDANTS

176.    The allegations contained in the foregoing paragraphs are incorporated by reference.

177.    Plaintiff is a qualified individual with a disability.

-27-

178.    Defendants ignored her medical documentation which cleared her to return to campus.

179.    Defendants did not engage Plaintiff in the interactive process.

180.    Defendants barred Plaintiff from campus for one week because of her disability.

181.    Defendants engaged in heightened scrutiny of Plaintiff's medical documentation and related sick leave requests.

182.    Defendants subjected Plaintiff to different standards and procedures for requesting sick leave as well as other accommodations such as remote instruction, as explained above.

183.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## THIRTEENTH CAUSE OF ACTION

### AIDING & ABETTING GENDER DISCRIMINATION
### IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### AGAINST BROPHY

184.    The allegations contained in the foregoing paragraphs are incorporated by reference.

185.    Brophy knew or should have known about the unlawful gender discrimination because it was reported to him on multiple occasions, and because he was (and is) the President of the College.

186.    Brophy possessed the power and authority to hire and fire employees.

187.    Brophy was (and is) Plaintiff's superior and has jurisdiction over her Department.

188.    Despite knowledge of the ongoing gender discrimination, Brophy took no steps to remediate it and, instead, attempted to justify the pay disparity with incoherent and inconsistent explanations, as described above.

189.    By ignoring and/or intentionally rejecting legitimate reports of unlawful gender discrimination and/or by reason of his failure to address the unlawful gender discrimination, Brophy aided and abetted violations of the New York State Human Rights Law.

190.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## FOURTEENTH CAUSE OF ACTION

### AIDING & ABETTING GENDER DISCRIMINATION
### IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### AGAINST LANTZKY-EATON

191.    The allegations contained in the foregoing paragraphs are incorporated by reference.

192.    Lantzky-Eaton knew or should have known about the unlawful gender discrimination because it was reported to her on multiple occasions, and because she was the Provost and Vice President of Academic Affairs at the College.

193.    Lantzky-Eaton possessed the power and authority to hire and fire employees.

194.    Lantzky-Eaton was Plaintiff's superior and had jurisdiction over her Department.

195.    Despite knowledge of the ongoing gender discrimination, Lantzky-Eaton took no steps to remediate it.

196.    By ignoring and/or intentionally rejecting legitimate reports of unlawful gender discrimination and/or by reason of her failure to address the unlawful gender discrimination, Lantzky-Eaton aided and abetted violations of the New York State Human Rights Law.

197.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## FIFTEENTH CAUSE OF ACTION

### AIDING & ABETTING GENDER DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST FLYNN

198.    The allegations contained in the foregoing paragraphs are incorporated by reference.

199.    Flynn knew or should have known about the unlawful gender discrimination because it was reported to her on multiple occasions, and because she was the Director of Human Resources at the College.

200.     Flynn possessed the power and authority to hire and fire employees.

201.     Upon information and belief, Flynn was Plaintiff's superior and had jurisdiction over her Department.

202.     Despite knowledge of the ongoing gender discrimination, Flynn took no steps to remediate it.

203.     By ignoring and/or intentionally rejecting legitimate reports of unlawful gender discrimination and/or by reason of her failure to address the unlawful gender discrimination, Flynn aided and abetted violations of the New York State Human Rights Law.

204.     Plaintiff has thereby been damaged in an amount as yet undetermined.

## SIXTEENTH CAUSE OF ACTION

### AIDING & ABETTING DISCRIMINATION BASED ON RACE OR COLOR IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST BROPHY

205.     The allegations contained in the foregoing paragraphs are incorporated by reference.

206.     Brophy knew or should have known about the unlawful racial and/or color-based discrimination because it was reported to him on multiple occasions, and because he was (and is) the President of the College.

207.     Brophy possessed the power and authority to hire and fire employees.

208.    Brophy was (and is) Plaintiff's superior and has jurisdiction over her Department.

209.    Despite knowledge of the ongoing discrimination, Brophy took no steps to remediate it and, instead, attempted to justify the pay disparity with incoherent and inconsistent explanations, as described above.

210.    By ignoring and/or intentionally rejecting legitimate reports of unlawful discrimination and/or by reason of his failure to address the unlawful discrimination, Brophy aided and abetted violations of the New York State Human Rights Law.

211.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## SEVENTEENTH CAUSE OF ACTION

### AIDING & ABETTING DISCRIMINATION BASED ON RACE OR COLOR IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST LANTZKY-EATON

212.    The allegations contained in the foregoing paragraphs are incorporated by reference.

213.    Lantzky-Eaton knew or should have known about the unlawful racial and/or color-based discrimination because it was reported to her on multiple occasions, and because she was Provost and Vice President of Academic Affairs at the College.

214.    Lantzky-Eaton possessed the power and authority to hire and fire employees.

215.     Lantzky-Eaton was Plaintiff's superior and had jurisdiction over her Department.

216.     Despite knowledge of the ongoing discrimination, Lantzky-Eaton took no steps to remediate it.

217.     By ignoring and/or intentionally rejecting legitimate reports of unlawful discrimination and/or by reason of her failure to address the unlawful discrimination, Lantzky-Eaton aided and abetted violations of the New York State Human Rights Law.

218.     Plaintiff has thereby been damaged in an amount as yet undetermined.

## EIGHTEENTH CAUSE OF ACTION

**AIDING & ABETTING DISCRIMINATION BASED ON RACE OR COLOR
IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
AGAINST FLYNN**

219.     The allegations contained in the foregoing paragraphs are incorporated by reference.

220.     Flynn knew or should have known about the unlawful racial and/or color-based discrimination because it was reported to her on multiple occasions, and because she was the Director of Human Resources at the College.

221.     Flynn possessed the power and authority to hire and fire employees.

222.     Upon information and belief, Flynn was Plaintiff's superior and had jurisdiction over her Department.

223.    Despite knowledge of the ongoing discrimination, Flynn took no steps to remediate it.

224.    By ignoring and/or intentionally rejecting legitimate reports of unlawful discrimination and/or by reason of her failure to address the unlawful discrimination, Flynn aided and abetted violations of the New York State Human Rights Law.

225.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## NINETEENTH CAUSE OF ACTION

**AIDING & ABETTING RETALIATION
IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
AGAINST BROPHY**

226.    The allegations contained in the foregoing paragraphs are incorporated by reference.

227.    Brophy knew or should have known about the unlawful retaliation because it was reported to him on multiple occasions, and because he was (and is) the President of the College.

228.    Brophy possessed the power and authority to hire and fire employees.

229.    Brophy was (and is) Plaintiff's superior and has jurisdiction over her Department.

230.    Despite knowledge of the ongoing retaliation, Brophy took no steps to remediate it.

231.    By ignoring and/or intentionally rejecting legitimate reports of unlawful retaliation and/or by reason of his failure to address the unlawful retaliation, Brophy aided and abetted violations of the New York State Human Rights Law.

232.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## TWENTIETH CAUSE OF ACTION

### AIDING & ABETTING RETALIATION
### IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### AGAINST LANTZKY-EATON

233.    The allegations contained in the foregoing paragraphs are incorporated by reference.

234.    Lantzky-Eaton knew or should have known about the unlawful retaliation because it was reported to her on multiple occasions, and because she was Provost and Vice President of Academic Affairs at the College.

235.    Moreover, Lantzky-Eaton was directly involved in certain acts of retaliation, including the suspension of Plaintiff's email account and scrutiny over her job duties.

236.    Lantzky-Eaton possessed the power and authority to hire and fire employees.

237.    Lantzky-Eaton was Plaintiff's superior and had jurisdiction over her Department.

238.    Despite knowledge of the ongoing retaliation, Lantzky-Eaton took no steps to remediate it.

239.    By ignoring and/or intentionally rejecting legitimate reports of unlawful retaliation and/or by reason of her failure to address the unlawful retaliation, Lantzky-Eaton aided and abetted violations of the New York State Human Rights Law.

240.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## TWENTY-FIRST CAUSE OF ACTION

### AIDING & ABETTING RETALIATION
### IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### AGAINST FLYNN

241.    The allegations contained in the foregoing paragraphs are incorporated by reference.

242.    Flynn knew or should have known about the unlawful retaliation because it was reported to her on multiple occasions, and because she was the Director of Human Resources at the College.

243.    Moreover, Flynn was present for several of the conversations between Plaintiff and Lantzky-Eaton surrounding the retaliatory suspension of Plaintiff's Hilbert email. Flynn also was directly responsible for the HR-related decisions that form the basis for a portion of Plaintiff's retaliation claims.

244.    Flynn possessed the power and authority to hire and fire employees.

245.    Upon information and belief, Flynn was Plaintiff's superior and had jurisdiction over her Department.

246.    Despite knowledge of the ongoing retaliation, Flynn took no steps to remediate it.

247.    By ignoring and/or intentionally rejecting legitimate reports of unlawful retaliation and/or by reason of her failure to address the unlawful retaliation, Flynn aided and abetted violations of the New York State Human Rights Law.

248.    Plaintiff has thereby been damaged in an amount as yet undetermined.

## JURY DEMAND

249.    Plaintiff demands a trial by jury on all issues and defenses in this case.

## DAMAGES

250.    Plaintiff seeks all damages allowed under the law, including monetary relief such as back pay, benefits, lost wages, liquidated damages, punitive damages, interest, attorneys' fees, and:

      a.   Plaintiff seeks an injunction prohibiting Defendants from engaging in unlawful practices.

      b.   Plaintiff seeks additional equitable relief as may be appropriate, such as a raise to parity with male comparators, promotion, front pay, and court costs.

c. Plaintiff seeks compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

d. Plaintiff seeks reasonable attorneys' fees and costs, including reasonable expert fees

e. Plaintiff seeks pre- and post-judgment interest at the maximum rates allowed by law.

**WHEREFORE**, plaintiff Donna J. Zimpfer, by and through her attorneys Rupp Baase Pfalzgraf Cunningham LLC, hereby demands judgment against defendants Hilbert College, Michael Brophy, Kristina Lantzky-Eaton, and Maura Flynn, jointly and severally, awarding her all relief requested, and for such other and further relief which this Court may deem just and proper.

Dated: February 9, 2021
           Buffalo, New York

                           **RUPP BAASE PFALZGRAF CUNNINGHAM** LLC
                           Attorneys for Plaintiff, Donna J. Zimpfer

                           By:   s/ Matthew D. Miller
                                  Matthew D. Miller, Esq.
                                  Elizabeth A. Holmes, Esq.
                                  James R. O'Connor, Esq.
                                  1600 Liberty Building
                                  Buffalo, New York 14202
                                  Telephone: (716) 854-3400
                                  miller@ruppbaase.com
                                  holmes@ruppbaase.com
                                  oconnor@ruppbaase.com