UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONNA J. ZIMPFER,

                  Plaintiff,

       v.                                    Civil Action No. 1:21-cv-00231

HILBERT COLLEGE, MICHAEL BROPHY, PRESIDENT, KRISTINA LANTZKY, PROVOST AND VICE PRESIDENT FOR ACADEMIC AFFAIRS, and MAURA FLYNN, HUMAN RESOURCES DIRECTOR,

                  Defendants.

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

                                           **BOND, SCHOENECK & KING, PLLC**
                                           Christa R. Cook
                                           Suzanne M. Messer
                                           *Attorneys for Defendants*
                                           Office and P.O. Address
                                           One Lincoln Center
                                           Syracuse, New York  13202-1355
                                           Telephone:  (315) 218-8000

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    POINT I:    PLAINTIFF HAS NOT RAISED A QUESTION OF FACT AS TO WHETHER FACTORS OTHER THAN GENDER CAUSED THE DISPARITY IN HER WAGES AND HAS NOT DEMONSTRATED THAT HILBERT'S STATED REASONS FOR SALARY DIFFERENCES WERE PRETEXTUAL ....................................................... 2

    POINT II:   PLAINTIFF'S RETALLIATION CLAIM HAS NO MERIT ............................ 7

    POINT III:  PLAINTIFF'S AIDING AND ABETTING CLAIMS MUST BE DISMISSED ................................................................................................... 8

    POINT IV: THERE IS NO INDIVIDUAL LIABILITY UNDER THE NYHRL ................... 9

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allessi v. N.Y.S. Dep't of Corr. & Cmty. Supervision*,
  16 F. Supp. 3d 221 (W.D.N.Y. 2014) ................................................................................ 8

*Belfi v. Prendergast*,
  191 F.3d 129 (2d Cir. 1999) ............................................................................................... 2

*Belyea v. City of Glen Cove*,
  20-CV-5675 (MKB), 2023 WL 1929787 (E.D.N.Y. Feb. 9, 2023) ................................... 9

*Engelmann v. National Broadcasting Co.*,
  No. 94 Civ. 5616 (MBM), 1996 WL 76107 (S.D.N.Y. Feb. 22, 1996) .................. 3, 4, 6

*Lavin-Mceleney v. Marist College*,
  239 F.3d 476 (2d Cir. 2001) ............................................................................................... 2

*McHenry v. Fox News Network, LLC*,
  510 F. Supp. 3d 51 (S.D.N.Y. 2020) ................................................................................. 8

*Scalera v. Electrograph Sys., Inc.*,
  848 F. Supp. 2d 352 (E.D.N.Y. 2012) ............................................................................ 10

*Stevenson v. New York State Department of Corrections and Community Supervision*,
  21-cv-355, 2022 WL 179768 (W.D.N.Y. Jan. 20, 2022) .................................................. 9

*Tomka v. Seiler Corp.*,
  66 F.3d 1295 (2d Cir. 1995) ............................................................................................... 6

15733786

**PRELIMINARY STATEMENT**

Defendants Hilbert College (the "College"), Michael Brophy ("Brophy"), Kristina Lantzky-Eaton ("Lantzky"), and Maura Flynn ("Flynn") (collectively ("Defendants") submit this reply memorandum in further support of their motion for summary judgment seeking dismissal of Plaintiff Donna Zimpfer's Complaint (ECF Doc. No. 34).

Plaintiff's Complaint originally contained 21 causes of action alleging discrimination on the basis of gender, race and disability. In her opposition to Defendants' motion for summary judgment, Plaintiff withdrew seven of those claims, including all claims alleging discrimination on the basis of race/national origin (Second, Fourth, Sixth, Sixteenth, Seventeenth and Eighteenth causes of action) and disability discrimination (Twelfth cause of action). *Plaintiffs' Memo.*, n.1. The crux of her remaining causes of action is that Defendants discriminated against her on the basis of her gender by paying her less than her male colleagues, and then retaliated against her for making a complaint of discrimination.

In opposition to Defendants' motion, Plaintiff submits a declaration replete with her opinions, beliefs and characterizations, some of which are directed toward her now-withdrawn disability discrimination claim. It is axiomatic that such self-serving, unsupported statements cannot be used to raise a question of fact sufficient to defeat summary judgment. The record before the Court, which consists not only of testimony and sworn statements of Hilbert witnesses, but also of an unrefuted expert report, demonstrates that Plaintiff's salary was not influenced by her gender. Further, Plaintiff's opinion and paranoid assertions concerning the purported "retaliatory" disruption in her email falls flat. She admitted during her deposition, and does not dispute in her declaration, that nothing was deleted from her email account. For these reasons, and

1

the reasons discussed more fully in Defendants' moving memorandum, Plaintiffs' Complaint must be dismissed in its entirety.

## ARGUMENT

## POINT I:

## PLAINTIFF HAS NOT RAISED A QUESTION OF FACT AS TO WHETHER FACTORS OTHER THAN GENDER CAUSED THE DISPARITY IN HER WAGES AND HAS NOT DEMONSTRATED THAT HILBERT'S STATED REASONS FOR SALARY DIFFERENCES WERE PRETEXTUAL

Plaintiff cites to *Belfi v. Prendergast*, 191 F.3d 129 (2d Cir. 1999) and *Lavin-Mceleney v. Marist College*, 239 F.3d 476 (2d Cir. 2001), in support of her argument that the fact that Plaintiff was paid less than *everyone – both male and female* – in the Criminal Justice division is irrelevant to her gender discrimination claim. *Plaintiff's Memo.*, at 5. Neither case supports her argument. In *Belfi*, the only other employees who held the same position as the plaintiff were male.[1] In *Lavin-Mceleney*, while the Second Circuit mentioned that one of the two comparators was female (like plaintiff), the issue discussed was whether the Second Circuit should follow Fourth Circuit precedent in requiring the identification of a male comparator. The Court held that it need not reach that issue because Plaintiff had identified a male comparator (239 F.3d at 481) and went on to discuss the validity of a non-statistical study relied upon by one of Marist's expert witnesses at trial. *Id.* at 481-82. That the plaintiff was paid less than both female and male colleagues in that case was not discussed or evaluated by the Court. Here, that Plaintiff was paid less than everyone in her division regardless of

---

[1] *Belfi* is further distinguishable because the employees there held the exact same position and were subject to a fairly standardized pay plan that set specific objective criteria for compensation decisions. 191 F.3d at 132-33.

2

gender is but one piece of uncontroverted evidence that demonstrates that gender was not a consideration in Plaintiff's pay.

Plaintiff focuses her remaining arguments primarily on disputing the impact of a variety of other factors that influenced the compensation of her colleagues. *See e.g., Plaintiff's Memo.*, at 5-10. She argues at length that because she had more seniority, she should have been paid more because her skills were "equivalent, if not superior" to those of her colleagues. *Id.,* at 7. In support of this, she cites to *Engelmann v. National Broadcasting Co.*, No. 94 Civ. 5616 (MBM), 1996 WL 76107 (S.D.N.Y. Feb. 22, 1996). But, *Engelmann* does not actually support Plaintiff's position. There, the employer argued that seniority was one reason for the higher salaries of the plaintiff's male colleagues, and the court recognized this as a legitimate reason for compensation differences under the EPA. *Id.* at *10. Neither the EPA nor *Engelmann* holds that the reverse is true. In other words, neither the statute nor the case law supports an argument that where an employee with seniority is paid less, there is a presumption of gender discrimination.

Interestingly, *Engelmann* also recognized that "[t]o attract qualified people, an employer may offer [incoming employees] their reservation price or opportunity cost – *i.e.,* the salary they would command in another job." *Id.* Such "salary matching" (i.e., paying based on market price), is "a valid reason for wage differences, and one that falls into the catch-all factor-other-than-sex." *Id.*[2] Dr. Brophy explained that external market conditions are the primary influence on starting salaries for faculty members in higher education because of its dependence on hiring top academic talent. *Brophy*

---

[2] *Engelmann* also weighs against Plaintiff's repeated assertions that an analysis of "equal skill" is a "question for the jury." *Plaintiff's Memo.*, at 7, 8, 10. *Engelmann* was a motion for summary judgment.

3

15733786

*Decl.*, ¶ 14.  These market conditions resulted in the salary compression (i.e., pay disparities) at Hilbert College (*id.*, ¶ 13) – not the gender of the faculty members.

Plaintiff also states her "belief" that Defendants intentionally omitted discussion about Professor Culver from their motion papers.  *Zimpfer Decl.*, n.2.  Culver was not discussed for the simple reason that Plaintiff did not make allegations about Culver in her Complaint.  She proceeds to complain about his higher salary, again, relying on the fact that she began working at Hilbert "almost a decade" before Culver was hired and opining that Culver's "professional experience" "was not grounded in forensics or forensic sciences."  *Id.*, ¶ 17.  As discussed above, market conditions nearly ten years after Plaintiff was hired caused Culver to be paid *slightly* more than she was paid.  And, Plaintiff's "opinion" that Culver's experience was not grounded in forensic sciences is not supported by anything in the record.[3]  Rather, it is just Plaintiff's own self-serving conclusory statement.  As recognized by *Engelmann*, cited by Plaintiff,

> A wage discrimination plaintiff, like any other, may not rest on conclusory allegations of discrimination to defeat an employer's legitimate explanation for its conduct. Rather, the plaintiff must offer specific facts to create an issue of fact as to whether the employer's proffered justifications are true or false.

1996 WL 76107, at *11.  Plaintiff has not offered any specific facts with respect to Culver or any of the colleagues she claims to be "comparators."  She offers only her beliefs and opinions as to their background and qualifications, which are insufficient to raise a question of fact.[4]

---

[3] Indeed, Culver was a professor in the Forensic Science Department, and Plaintiff concedes that she never taught any courses in Forensic Science.  *See Defendant's Memo.*, at 5-6.

[4] Plaintiff misleadingly quotes from Dr. Lantzky's deposition and asserts that Lantzky "stated that there was no preference at all for PhD candidates when hiring in the Criminal Justice Department." *Plaintiff's Memo.*, at 8.  A complete reading of that portion of Dr. Lantzky's deposition, however, demonstrates that Dr. Lantzky was answering questions about whether Hilbert required a certain degree level of its faculty

4

In contrast, in addition to the individualized explanations of each relevant faculty member, Defendants offered an expert statistical analysis of the salaries of Hilbert's faculty members.  *See Massey Decl., Exs. 1 and 2*.  Notably, Plaintiff offers no expert to contradict Defendants' expert and never deposed Defendants' expert, despite Defendants' timely disclosure.  Instead, she attempts only to discredit the expert opinion of Dr. Massey through unsupported assertions in a memorandum of law.  *See Plaintiff's Memo.*, at 12-14.

Plaintiff incorrectly cites to Dr. Masey's findings as being unreliable.  This a gross mischaracterization of Dr. Masey's report and declaration in which she identifies the smaller data set and explains the manner in which she verified her findings in light of the sample size.  *Massey Decl.*, ¶¶13-14.

Plaintiff then argues that the analysis relies on "misleading data," but admits that the data relating to Plaintiff's salary used in the study was in fact accurate.  *Plaintiff's Memo.*, at 12. Plaintiff states that Welch improperly relied on her years of teaching experience at the time of hire (*id.,* citing *Zimpfer Decl.*, ¶ 76), but does not explain how doing so was "misleading" and does not indicate that Welch treated any other faculty member differently in connection with the study.  Plaintiff further states (in bold print) that Dr. Brophy testified that Welch advised Hilbert to increase Zimpfer's salary at the conclusion of the "gender-based study."  *Plaintiff's Memo.*, at 12.  It is not disputed that Zimpfer's salary was raised; however, nothing in the study or Dr. Brophy's testimony suggests that Zimpfer's salary was raised *because of her gender*.  The studies

---

members (i.e., whether there was a requirement that a faculty member have a PhD to be hired at Hilbert). Lantzky did not testify as to the impact of an individual's education/degree level on his or her compensation, which is what is at issue in this case.

5

performed by Welch "do not show that women are paid statistically significantly less than men" at Hilbert. *Massey Decl.*, ¶19. Dr. Brophy testified that the salary increase was to address salary compression. *Miller Decl., Ex. 2* at 162. These statements are consistent. Welch did not find that gender influenced salary differences, and therefore, factors *other than gender* caused a recognized difference in pay between certain faculty members and their colleagues (male and/or female). Nothing in the record supports Plaintiff's belief that the pay raise she received in 2020 was related to her gender.[5]

      Plaintiff's argument that this case is akin to *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995) is misplaced. There, the Second Circuit reversed the district court's grant of summary judgment because the employer had not "particularized" the "legitimate business" factors relied upon or explained how those factors were job-related. *Id.* at 1312. Here, Defendants have done so. Each employee identified by Plaintiff in her complaint is discussed in detail and the reasons for differences in salaries between Plaintiff and each comparator is explained, including the additional administrative responsibilities of each faculty, all of which went far beyond attending dinners and events. *Brophy Decl.*, ¶¶14-19; *Zimper Decl.*, ¶ 8. Further, Dr. Brophy explained the market conditions that influence salaries in the higher education field. *See id.*, ¶¶ 12-13, 15. As the *Engelmann* court recognized:

> …the EPA does not suggest that some legitimate reasons are more legitimate than others, and it does not require an employer to pick one of the enumerated criteria and base all salary decisions on that criterion, while ignoring the others. Instead, it recognizes that some criteria apply to some employees while others apply to other employees. Any statutory interpretation that allowed an employer to rely on only one criterion would

---

[5] Plaintiff states in her declaration that she received a pay increase "in or around 2012" because Hilbert had "determined that I was being paid more than my male counterparts." *Zimpfer Decl.*, ¶ 14. This is yet another unsupported assertion of Plaintiff alone. Regardless, Plaintiff cannot rely upon allegations that arose in 2012 to support a claim that she did not assert until 2019.

6

15733786

render all others illegitimate for that employer, and would straitjacket the employer in its ability to determine salaries on an individualized basis. The EPA was drafted with recognition that salary determinations are made on a retail rather than a wholesale basis, and it allows employers to make such decisions one by one, so long as it acts in good faith.

Hilbert made individualized salary determinations based on, *inter alia*, the qualifications, responsibilities and market conditions. Plaintiff's opposition does not raise a question of fact, and Defendants' motion should be granted.

## POINT II

## PLAINTIFF'S RETALIATION CLAIM HAS NO MERIT

Nothing in Plaintiff's opposition raises a question of fact sufficient to defeat summary judgment on her claims of retaliation. Plaintiff's declaration on this topic do little more than parrot the allegations in the complaint, all of which Defendants addressed in their moving papers. Plaintiff does not dispute that Hilbert identified suspicious activity, or that email accounts other than those of Plaintiff and her husband were affected. *See Defendants' Memo.*, at 15-16. The College identified suspicious activity that indicated that Zimpfer's password may have been compromised. *Brophy Decl.*, ¶¶ 37-39; *Lantzky Decl.*, ¶¶19-21, 24, 32. She relies only on the timing of the investigation into the unusual activity, which was obviously not under the control of the College, which was merely responding to an immediate concern.

She states again that she "believed that Defendants were trying to get rid of the email I had referenced in the internal complaint." *Plaintiff's Memo.*, at 7. Plaintiff very well may have "believed" this to be true, but it does not make it so. Plaintiff concedes that when her email was restored, nothing had been deleted. *Zimpfer Depo.*, 126; *Brophy Decl.*, ¶¶40, 42.

7

Most importantly, Plaintiff states only that her email account was "affected for several days," and that this "disrupted [her] communications with my colleagues and students." *Plaintiff's Decl.*, ¶ 27. She provides no detail whatsoever as to the nature of the "disruption," or even what she means by "several days." Regardless, it is well established that an adverse employment action is required to prove a retaliation claim, and that what Plaintiff describes (to the extent it can be understood) did not "materially" change the "terms, privileges, duration or conditions of employment." *See Allessi v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, 16 F. Supp. 3d 221, 227 (W.D.N.Y. 2014).

Despite withdrawing her disability discrimination claim, she continues to include allegations about her accommodations requests in her declaration in opposition to Defendants' motion for summary judgment. *See Zimpfer Decl.*, ¶¶ 28-29. To the extent she is relying on these allegations in support of her retaliation claim, they are not borne out by the record. *See Defendants' Memo.*, at 18-19.[6]

## POINT III

## PLAINTIFF'S AIDING AND ABETTING CLAIMS MUST BE DISMISSED

Plaintiff argues that by being "courtesy-copied" on an email, "Lantzky and Flynn…conveyed through their silence that they would support Brophy's threat." *Plaintiff's Memo.*, n.12. Again, Plaintiff's legal citations do not support their argument. Plaintiff cites to *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51 (S.D.N.Y.

---

[6] Plaintiff admits that the same allegations underlie her hostile work environment claim, but still asserts that the allegations state two distinct claims (one for retaliation and one for a hostile work environment). *Plaintiffs' Memo.*, at 23-24. For the reasons stated in Defendants' moving memorandum, Plaintiff cannot allege a separate claim based on these same assertions. *See Defendants' Memo.*, at 16. Even if the Court views Plaintiff's hostile work environment claim as a separate claim distinct from her retaliation claims, summary judgment is appropriate for the same reasons as discussed above with respect to her retaliation allegations, and for those reasons discussed more fully in Defendants' moving memorandum. *Id.*, at 18-19.

8

15733786

2020), in support of their arguments that Lantzky and Flynn are liable under an aiding and abetting theory. But *McHenry* clearly states that to succeed on such a claim, the plaintiff must show that the defendant "actually participated" in unlawful conduct of the employer and must share "the intent or purpose of the principal actor." 510 F. Supp. 3d 68. The facts simply do not support such a finding here. Even if the Court accepts Plaintiff's conclusory, self-serving and unsupported belief that Dr. Brophy "threatened her," in the June 5 email (which he did not), it is an enormous leap to impose aiding and abetting liability on two individuals who were not part of the June 5 meeting, did not discuss Zimpfer's claim of salary discrepancy with Brophy and who took no part in writing the email. Further, Dr. Brophy did not "threaten" Plaintiff. He provided her with information about the impact of her refusal to sign an appointment letter prior to the following academic term. *Brophy Decl.*, ¶33. Regardless, there is no individual liability under the NYHRL (see Point IV), and the aiding and abetting claims must be dismissed.

## POINT IV
## THERE IS NO INDIVIDUAL LIABILITY UNDER THE NYHRL

Plaintiff ignores Defendants' citation to *Stevenson v. New York State Department of Corrections and Community Supervision*, 21-cv-355, 2022 WL 179768, at *20 (W.D.N.Y. Jan. 20, 2022) (citations omitted), in which this Court explained that "the New York Court of Appeals has recently stated that the NYSHRL 'does not render employees liable as individual employers.'" *See also Belyea v. City of Glen Cove*, 20-CV-5675 (MKB), 2023 WL 1929787, at *2-3 (E.D.N.Y. Feb. 9, 2023). Plaintiff argues without any support whatsoever that Brophy, Lantzky and Flynn are not corporate employees. *Plaintiff's Memo.*, at 25. She further cites to Dr. Brophy's deposition

9

15733786

testimony and Matt Holmes' deposition testimony, suggesting that the citations stand for the proposition that Brophy and Lantzky "would have had the power to hire or fire Ms. Zimpfer." *Id.*  Neither of Plaintiff's citations support this statement.[7]  Dr. Brophy was answering general questions about the hiring process at Hilbert (which involved department budgets and committees of people to interview and recommend a faculty hire).  Matt Holmes,[8] who worked in the IT Department and had no responsibility at the College for the hiring or firing of faculty or staff, speculated during his deposition that Dr. Lantzky wanted to fire Grann, but this is (1) not supported by anything other than his own speculation and (2) entirely irrelevant to Plaintiff's claims.  In short, Plaintiff has not raised a question of law or fact sufficient to defeat summary judgment.

## CONCLUSION

For the reasons stated herein and in Defendants' moving papers, Defendants' motion for summary judgment should be granted.

Dated:  March 31, 2023                                        BOND, SCHOENECK & KING, PLLC


By:___/s/ Suzanne M. Messer_____
        Christa R. Cook
        Suzanne M. Messer
*Attorneys for Defendants*
Office and P.O. Address
One Lincoln Center
Syracuse, New York  13202-1355
Telephone:  (315) 218-8000

---

[7] While Dr. Brophy admittedly had the power to hire and fire College employees, neither Lantzky nor Flynn had authority to do so where Zimpfer was concerned.  *See Answer*, ¶¶ 186, 200.  Accordingly, at the very least, the NYHRL claims against Lantzky and Flynn should be dismissed. *See Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352 (E.D.N.Y. 2012).

[8] Plaintiff cites to Holmes' Deposition as being Exhibit 4 to the Miller Declaration, but the deposition transcript of Mr. Holmes' deposition is Exhibit 7 to Attorney Miller's Declaration.